Entered on Docket
April 07, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: April 07, 2008**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 05-31424-DM |
| HANFORD NICHOLS LOCKWOOD, JR., | ) |
| aka HANFORD NICHOLS LOCKWOOD, IV, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| _____ | ) |

MEMORANDUM DECISION

Hanford Nichols Lockwood, Jr. ("Lockwood"), the debtor in this chapter 7 case, filed a motion (the "Reconsideration Motion") pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"), made applicable here by Federal Rule of Bankruptcy Procedure 9024, for relief from an order authorizing the assumption and assignment of an executory contract (the "Assumption Order").[1]  E. Lynn Schoenmann, the chapter 7 trustee ("Trustee") for debtor's estate, and JMS Labs Limited (U.S.A.), LLC ("JMS"), the counter-party to the executory contract and the entity to which the Trustee assigned the assumed contract, opposed the Reconsideration Motion. After a hearing on February 1, 2008, the court took the matter under advisement.  For the reasons set forth below, the court will enter an order granting the Reconsideration Motion in part and

---

[1] Silver Eagle Labs, Inc. and Michele Lockwood joined Lockwood in filing the Reconsideration Motion.  The court will refer to them and Lockwood collectively as "the Moving Parties."

-1-

denying it in part.[2]

## I. FACTS

Prior to the petition date, Lockwood designed and patented an "improved nasal dilator system" (the "patent"). Pursuant to a Patent and Know-how Purchase Agreement (the "IP Agreement"), Lockwood licensed use of the patent to JMS. At that time, Lockwood was the owner of the patent and the licensor under the IP Agreement.

Pursuant to section 4(a) of the IP Agreement, JMS agreed to pay Lockwood four percent of the net sales price of the nasal dilators sold or leased by JMS. Section 16 of the IP Agreement states that "LOCKWOOD agrees that any patentable or unpatentable improvements on the MaxAir (tm) Nasal Dilators made by him shall be included hereunder as though they had been included in this Agreement when said Agreement was made and entered into, and this without further payment or additional royalty by JMS."

On May 9, 2005, Lockwood filed a chapter 13 petition and his case was converted to chapter 7 on May 23, 2005. On August 19, 2005, JMS filed an adversary proceeding objecting to Lockwood's discharge. This court entered a judgment denying Lockwood's discharge; the Bankruptcy Appellate Panel for the Ninth Circuit affirmed the judgment on August 30, 2007. That affirmance has not been appealed.

On July 8, 2005, the IP Agreement was deemed rejected

---

[2]The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

Case: 05-31424   Doc# 62   Filed: 04/07/08   Entered: 04/07/08 14:57:23   Page 2 of 12

pursuant to section 365(d)(1),[3] which required Trustee to assume or reject (or obtain an extension to do either) the executory contract within sixty days after the order for relief in order to prevent a deemed rejection. More than one year later, on July 16, 2006, Trustee and JMS filed a joint Motion for Order Authorizing and Approving Transfer of All Assets and Assumption and Assignment of Executory Contract (the "Assignment Motion").

In the Assignment Motion, JMS and Trustee sought approval of a sale whereby JMS would acquire all of the rights of the estate (including its interests in the patent and its interests as the licensor under the IP Agreement) for $150,000. In other words, upon approval of the sale, JMS would become the owner of the patent, as well as the licensee and licensor under the IP Agreement. It no longer would be paying the royalty payments contemplated by Section 4(a) of the IP Agreement.

Significantly, in the Assignment Motion (at page 5, lines 17-20), JMS and Trustee stated that no dispute existed as to adequate assurance of future performance or curing of defaults as **"[i]n fact, the Trustee and JMS believe that, upon the assumption and assignment of the IP Agreement, the rights as owner of the Patents and as licensee will merge in JMS**." (Emphasis added). Not only did JMS and Trustee acknowledge this merger of interests in order to advance their position that the proposed assignment satisfied the requisites of section 365, they did not request in their

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

-3-

moving papers that they be relieved of the consequences of such a merger. Yet, when JMS presented the Assumption Order to the court for signing, it included a clause that stated: "Nothing contained herein shall be deemed to extinguish, by merger (including but not limited to merger of title) or otherwise, any rights that JMS has under the IP Agreement." Lockwood's counsel did not object to the form of the Assumption Order and the court signed it despite the inclusion of language that was broader than the relief requested in the Assignment Motion and inconsistent with admissions made in the Assignment Motion.

In addition, on page 6 of the Assignment Motion, JMS and Trustee acknowledged that with respect to the contract being assumed and assigned, "there are only two parties to the agreement, the Trustee and JMS" and that **"the parties are effectively amending and then assuming the agreement, which is authorized procedure."** In other words, Lockwood was no longer considered a party to the IP Agreement and had not agreed to any amendment or modification of IP Agreement. Similarly, at the hearing on the Assignment Motion, JMS agreed with the court that assumption and assignment was not unlike a novation between JMS and Trustee.

Nevertheless, notwithstanding these acknowledgments by Trustee and JMS, JMS is now attempting to enforce the IP Agreement against Lockwood. Specifically, JMS has filed a state court action against Lockwood to force him to turn over "improvements and modifications" to the patent which he had agreed to provide as

-4-

the initial licensor under the IP Agreement.[4]  On February 29, 2008, the Moving Parties removed the state court action to this court, where it is pending as Adversary Proceeding No. 08-3019.

After JMS filed an amended complaint in the state court (now removed) action indicating that it seeks to enforce Lockwood's obligations under the IP Agreement, the Moving Parties filed the Reconsideration Motion, arguing that (1) the court erred in allowing the IP Agreement to be assumed and assigned following its deemed rejection, and (2) the court erred in signing an order that purported to prevent the invocation of legal defenses or doctrines (specifically, the doctrine of merger) otherwise possibly available to Lockwood as a result of the sale of the patent and the assignment of the IP Agreement.  The Moving Parties requested this court to strike the language in the Assumption Order regarding merger, as that relief was not sought in the Assignment Motion and was inconsistent with the admissions made by JMS and Trustee.

The court is not persuaded by the Moving Parties' first argument, but agrees with their second contention.  Therefore, the court will modify the Assignment Order to strike the merger

---

[4]In response to the Reconsideration Motion, JMS argued that the Moving Parties lacked standing to prosecute the Reconsideration Motion as they had no pecuniary interest in or arising from the Assumption Order.  The court disagrees, as it noted at the hearing.  To the extent JMS is attempting to utilize the Assumption Order and the rights it acquired thereunder to enforce the IP Agreement against, and obtain intellectual property from, Lockwood and the Moving Parties, they are detrimentally affected by it and have a pecuniary interest in the matter.  They therefore have standing to prosecute the Reconsideration Motion. Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 777 (9th Cir. 1999) (party has standing to appeal an order that diminishes the party's property, increases its burdens, or detrimentally affects its rights).

language and other language purporting to limit or affect the rights and defenses of Lockwood; it will not vacate the approval of the sale, assumption and assignment.

## II. DISCUSSION

A. <u>Approval of the Assumption and Assignment Was Appropriate</u>

Lockwood contends that this court lacked jurisdiction to approve the assumption and assignment of the IP Agreement after its deemed rejection, that the order was thus void and that JMS was therefore limited to the remedies provided in section 365(n) to licensees of intellectual property upon rejection of their contract. The court disagrees. When a rejection occurs, an executory contract does not cease to exist. Rather, the rejection operates as a breach. See 11 U.S.C. § 365(g) (" . . . the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease . . ."); <u>First Ave. West Bldg., LLC v. James (In re Onecast Media, Inc.)</u>, 439 F.3d 558, 563 (9th Cir. 2006) (rejection constitutes a breach of contract);[5] <u>Kopolow v. P.M. Holding Corp. (In re Modern</u>

---

[5] The Ninth Circuit explained in <u>Onecast Media</u> that

> [w]hile rejection of a lease prevents the debtor from obtaining future benefits of the lease (such as ongoing possession of leased premises), it does not rescind the lease or defeat any pending claims or defenses that the debtor had in regard to that lease. See 3 COLLIER ON BANKRUPTCY § 365.09[1] (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2005) ("Rejection does not . . . affect the parties' substantive rights under the contract or lease, such as the amount owing or a measure of damages for breach and does not waive any defenses to the contract.").

<u>Onecast Media</u>, 439 F.3d at 563. Therefore, even when rejection occurs, the parties to the contract can waive the breach and reinstate the contract, just as they could under state law.

-6-

Case: 05-31424   Doc# 62   Filed: 04/07/08   Entered: 04/07/08 14:57:23   Page 6 of 12

Textile, Inc.), 900 F.2d 1184, 1191 (8th Cir. 1990) ("We find it clear from these sections that the Trustee's rejection operates as a breach of an existing and continuing legal obligation of the debtor, not as a discharge or extinction of the obligation itself. In other words, the lessor's claim against the debtor for breach of the lease survives the Trustee's rejection of the lease."); Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.), 208 F.3d 498, 505 (5th Cir. 2000) ("The Bankruptcy Code provides that the effect of a rejection of an executory contract is a breach, see 11 U.S.C. § 365(g)(1994), and the breach gives rise to a claim for damages by the non-debtor party to the contract.").

If the parties to the contract agree to waive the breach and rejection, the court has jurisdiction to approve the assumption of that contract. The court agrees with those cases holding that a lessor or counter-party to an executory contract can waive the automatic rejection under section 365(d)(4) as long as the intention to relinquish or waive a right or advantage is clearly established by the evidence. In re Southern Motel Assocs., Ltd., 81 B.R. 112 (Bankr. M.D. Fla. 1987) (lessor may waive its right to have lease deemed rejected if, through its conduct, it evidences an intention to have lease treated as continuing, but waiver of such right must be clearly established by evidence); see also Bethesda-Union Soc'y of Savannah, Inc. v. Austin (In re Austin), 102 B.R. 897, 900-01 (Bankr. S.D. Ga. 1989); In re T.F.P. Resources, Inc., 56 B.R. 112, 115-16 (Bankr. S.D.N.Y. 1985) ("It thus appears that § 365(d)(4) can be waived by a lessor. Like former § 70(b), it was enacted for the benefit of lessors and we

-7-

also see no reason why that benefit can not be waived, notwithstanding the conclusiveness of the self-executing mechanism of § 365(d)(4)."); In re VMS Nat. Props., 148 B.R. 942, 945 (Bankr. C.D. Cal. 1992).[6]

The Ninth Circuit has not decided whether the equitable doctrines of waiver and estoppel are available under section 365(d)(4). George v. City of Morro Bay (In re George), 177 F.3d

---

[6] The Moving Parties cite In re Las Margaritas, Inc., 54 B.R. 98 (Bankr. D. Nev. 1985), for the proposition that a bankruptcy court does not "have the jurisdiction to reinstate the debtor's right to assume, or to approve a sale or assignment of" a lease or executory contract that has been deemed rejected under section 365(d)(4). Id. at 99. The court does not agree with this legal conclusion. If both parties to the contract or lease explicitly agree to waive the deemed rejection (as here), nothing in the Bankruptcy Code denies the bankruptcy court the jurisdiction and authority to approve such a waiver and a subsequent assumption and assignment of that contract or lease. In Las Margaritas, unlike here, the debtor was -- over the objections of the lessor and counter-party -- attempting to assume a lease that had been deemed rejected.

The Moving Parties also rely on Transamerica Comm'l Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.), 945 F.2d 1089 (9th Cir. 1991), where the Ninth Circuit held that a "financial accommodation contract" could not be assumed even with the consent of the lender as section 365(c)(2) "prohibits the assumption of all financial accommodation contracts with no reference to the consent of the non-debtor party to the contract." Id. at 1092. Such contracts would allow an unsecured creditor to receive full payment on its unsecured claim at the expense of other unsecured creditors. As the Ninth Circuit notes, the prohibition against the assumption of financial accommodation contracts "protects all unsecured creditors, not just the lender, and the lender's consent alone is not sufficient to abrogate it." Id.

In contrast, section 365(d)(4) is not prohibitive; it merely provides that a contract is deemed rejected when the relevant time period expires. It does not prohibit the parties to the contract to waive (here, explicitly) the deemed rejection or preclude the court from approving a such a consensual assumption. And unlike section 365(c)(2), section 365(d)(4) was enacted for the benefit of the counter-party to the lease or executory contract, and not for the benefit of all unsecured creditors. The counter-party can waive the benefit.

-8-

885, 890 (9th Cir. 1999). It has, however, set forth the elements of such waiver: "(1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit." Id. at 889. Here, all three elements have been clearly established by the counter-party's (JMS's) admission in the Assignment Motion that it was waiving the deemed rejection and by its request that this court disregard the deemed waiver. As both of the parties to the contract (JMS and the estate, through the Trustee) explicitly moved this court to disregard the rejection and to approve the assumption and assignment, this court had jurisdiction to enter the Assumption Order.[7]

Because the court did have jurisdiction to enter the Assumption Order, the order is not void. In addition, in light of the court's approval of the assignment and assumption of the IP Agreement, section 365(n) (which limits a licensee's remedies in the event of rejection) is inapplicable. Therefore, the court will deny the request to vacate those portions of Assumption Order approving the assumption and assignment of the IP Agreement.

B.  <u>The Language Regarding Merger Must Be Stricken</u>

As noted above, the language in the order attempting to circumvent the legal effect of merger was inconsistent with the admissions of Trustee and JMS in their Assumption Motion that the

---

[7]That said, the waivers of default and rejection incorporated into the Assumption Order should be limited to the parties who sought it: JMS and Trustee. The Assumption Order should not have contained language waiving or eliminating rights and defenses of others.

-9-

rights of JMS as holder of the patent and as licensee would merge. Moreover, the Assignment Motion did not seek such relief. The court therefore erred in approving that language. Pursuant to FRCP 60(b)(6) (incorporated by Rule 9024), the Moving Parties are entitled to relief from that provision of the Assumption Order.

Even if JMS and Trustee had sought such relief in their Assignment Motion and even if they had not judicially admitted that the merger would occur upon assumption and assignment of the IP Agreement, the court is not certain how approval of the language would have been appropriate in the absence of authority that this court could have circumvented the legal doctrine of merger if it would have otherwise been applicable.[8] The court will therefore grant the Reconsideration Motion to the extent it requests that the sentence containing the merger language be

---

[8]The court makes no determination here whether or not the doctrine of merger would apply; the issue has not been properly presented or briefed. The court likewise expresses no opinion as to whether JMS has a viable and enforceable claim against the Moving Parties as a result of the Assumption Order. While JMS contended at oral argument on the Reconsideration Motion that the IP Agreement remains binding on Lockwood because of the denial of his discharge, the parties have not briefed this issue. The court will not resolve it now, particularly as too many other issues remained unaddressed. Even though Trustee and JMS could (and did) waive the sixty-day deadline for the assumption of the executory contract, does the assumption and assignment result in the individual debtor (as opposed to the estate) being bound to perform the estate's future obligations on an ongoing basis if he has any defenses to performance arising out of the IP Agreement or arising out of the deemed rejection and breach of the IP Agreement? In other words, while the estate (through Trustee) and JMS may have cured or waived defaults as between themselves in the assumption and assignment process, is the individual debtor (Lockwood) bound when he was not a party to, or consented to, that "effectively amended" agreement? Can JMS enforce a one-sided performance against Lockwood when it is no longer performing its obligations as licensee under the IP Agreement? Can JMS assert rights as a licensee when it is now the licensor and owner of the patent?

-10-

stricken.[9]

### III. CONCLUSION

Counsel for the Moving Parties should upload and serve an order consistent with this Memorandum Decision .

*** END OF MEMORANDUM DECISION ***

---

[9]Similarly, the Assumption Order contains other language regarding the legal effect of the deemed rejection on Lockwood which appears broader than the relief requested in the Assignment Motion. Even though Trustee and JMS, in arguing that assumption and assignment was possible after the deemed rejection, admitted that the IP Agreement and the assumption/assignment was only between the estate and JMS, the Assumption Order provided on page 2 that "[t]o the extent that there was any previous rejection, neither the IP Agreement nor any rights therein reverted or transferred to [Lockwood]." The court should not have approved language that would have waived the rights of third parties (including Lockwood) to assert whatever defenses they may have arising from the deemed rejection/breach. That sentence will likewise be stricken and vacated pursuant to FRCP 60(b)(6).

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | Lawrence A. Jacobson, Esq.<br>Cohen and Jacobson |
| 3 | 900 Veterans Blvd., Ste. 600<br>Redwood City, CA 94063 |
| 4 | |
| 5 | Barry Milgrom, Esq.<br>Luce, Forward, Hamilton & Scripps LLP<br>Rincon Center II |
| 6 | 121 Spear St., Ste. 200<br>San Francisco, CA 94105-1582 |
| 7 | |

-12-